UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**WILLIAM C. HOUSTON,**

Debtor.

Case No. **07-61306-7**

*MEMORANDUM OF DECISION*

At Butte in said District this 20th day of August, 2009.

In this Chapter 7 case the Debtor filed on April 13, 2009, a motion (Docket No. 38) to avoid judicial lien of Wendell and Linda Anderson (together "Andersons") based upon 11 U.S.C. § 522(f)(1)(A). Andersons filed an objection, and filed a renewed motion to modify stay (Docket No. 33) to foreclosure their judicial lien against the Debtor's real property and other available assets, to which Debtor objected. After due notice hearing on these matters was held at Missoula on July 16, 2009. Andersons were represented by attorney Jon R. Binney of Missoula, and Linda Anderson ("Linda") testified. Debtor William C. Houston ("Houston") appeared and testified, represented by attorney Harold V. Dye of Missoula. The Trustee Richard J. Samson also testified. Exhibits ("Ex.") A, B, C, D, 1, 2, 3, 4, 5, and 6 were admitted into evidence without objection, and the Court left the record open for submission of a deposition of appraiser Jack McLeod ("McLeod"). At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, after which the matter would be taken under advisement. The parties' briefs have been submitted and reviewed by the Court, together with the record (including McLeod's deposition at Docket No. 67) and applicable law. These motions are ready for decision. For the reasons set forth below Debtor's motion to avoid lien will be granted in part

1

and denied in part, and Andersons' motion to modify stay will be granted by separate Order.

This Court has jurisdiction in this case under 28 U.S.C. 1334(a). Both Debtor's motion to avoid lien and Wendell's motion to modify stay are core proceedings under 28 U.S.C. § 157(b)(2). At issue is the extent to which Andersons' judicial lien impairs the Debtor's homestead according to the formula set forth at § 522(f)(2)(A)[1], and whether Wendell showed adequate cause to lift the stay under 11 U.S.C. § 362(d)[2]. The main contention between the parties involves what the value of Debtor's interest in his homestead would have been in the absence of any liens under § 522(f)(2)(A).

## FACTS

Andersons live next door to Houston off of U.S. Highway 93 in Ravalli County, Montana. After a dispute[3], Andersons filed a Complaint and Demand for Jury Trial against Houston in State District Court, Ravalli County, Cause No. DV-06-40 on July 18, 2006. After trial Andersons were awarded damages and a judgment against Houston in the amount of $475,524.00. No appeal of the state court judgment was filed and the judgment became final. By operation of law, MONT. CODE ANN. ("MCA") § 25-9-301(2), the judgment became a lien upon all real property of the judgment debtor that is not exempt from execution in Ravalli County. However, under MCA § 25-13-615 the homestead of the judgment debtor under Title

---

[1]Section 522(f)(2)(A) provides: "For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens."

[2]Wendell's motion to modify stay is based on both subsections 362(d)(1) and (d)(2). However, this being a Chapter 7 case, Debtor's reorganization under § 362(d)(2)(B) is moot.

[3]The facts of the dispute are set forth in detail in the Memorandum of Decision (Docket Nos. 49/51 ) entered in Adversary Proceeding No. 08-00014 on November 18, 2008, pages 3 to 22.

2

70, chapter 32, MCA, is exempt from execution.

Houston testified that the State of Montana Department of Transportation ("DOT") commenced a condemnation action against a portion of his homestead prior to his bankruptcy case. He testified that the DOT originally offered him $45,000 for the portion of his property it sought by eminent domain, and that eventually a settlement was reached with the DOT in the sum of $90,000.

Houston filed a voluntary Chapter 7 bankruptcy petition on November 7, 2007, with his Schedules and Statements. On Schedule A Debtor listed an undivided one-half interest[4] in a parcel of land described as Tract 1, Certificate of Survey No. 971, Deed Reference 469642, a/k/a 131 Bear Creek, Victor, MT 59875. Schedule A lists the current value of the Debtor's interest in the real property as $147,395.00, and the amount of secured claims encumbering the property as $615,452.00. Debtor listed the condemnation claim against the DOT on Schedule B at an indeterminate value.

McLeod's appraisal, Ex. 5, dated July 30, 2008, was performed as a result of the eminent domain action by the Montana DOT against part of Houston's real property (Parcel #2-34). The executive summary at the fourth page of Ex. 5 states the value of Houston's property affected by the taking, effective May 30, 2007[5], and amended as of the petition date of November 7, 2007, as $806,000 before the condemnation and $745,200 after the taking. McLeod's amendment as of the petition date of November 7, 2007, did not change the $745,200 value of the affected parcel after the taking. Together with the $196,000 value of the Debtor's second parcel consisting of

---

[4]The nature of the interest is completed with "JTWROS" (presumably "Joint Tenancy with Right of Survivorship").

[5]It appears that the "taking" as a result of the eminent domain action is dated May 30, 2007. McLeod Deposition (Docket No. 67, page 9).

3

15.69 acres (Ex. 5, p. 20), the total value as of the petition date was $941,200. In his deposition (Docket No. 67) McCleod testified at page 9 that the total value of the property was $1,002,000, prior to the taking[6]. At the hearing on July 16, 2009, Houston gave his opinion on direct examination that the value of his property is approximately $300,000.

Schedule C lists exempt property, including a homestead exemption in Debtor's residence claimed in the amount of $125,000, and a value in the amount stated of $147,395.00. No objection to Debtor's claim of $125,000 homestead exemption has been filed. Debtor listed Andersons on Schedule F as unsecured creditors with a claim in the amount of $476,524 based on a tort judgment.

Schedule D lists secured claims, including a first mortgage against Debtor's real property in the amount of $33,928.00 (Gerald E. Johnson) and a second mortgage in the amount of $105,000.00 ("Ravalli County Bank"). Ex. 1. The value of the property subject to the lien is stated as $348,789.00. Debtor argues that only half of the amounts of the two mortgages are counted in calculating the formula under § 522(f)(2)(A), in the amounts of $16,964 and $50,000. The Gerald E. Johnson secured claim is marked "Codebtor" on Schedule D (Ex. 1) but the Ravalli County Bank secured claim is not.

Based on a possible malpractice claim against the Debtor's state court attorney which the Trustee learned about from Andersons' state court attorney[7], the Trustee filed an asset report and request for claims bar date on February 5, 2008. Andersons initiated an adversary proceeding for

---

[6]McLeod declined to speculate what the value of Houston's joint tenancy interest would be other than one-half, under questioning by Houston's attorney. Deposition, pp 11-13.

[7]Ex. A and B at Docket No. 57 are correspondence between Samson and Robert T. Bell discussing a possible professional negligence claim against Houston's attorney Dustin Chouinard. Ex. D is a response to Bell's allegations by attorney David T. Markette, who is an attorney in the law firm of Markette and Chouinard, P.C.

4

exception of their claim from Debtor's discharge before the bar date for filing dischargeability complaints or objections to discharge. A Discharge of the Debtor was entered on February 6, 2008 (Docket No. 17)[8]. The second page of the Discharge explains debts that are not discharged as including: "Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged."

A total of three claims have been filed in this case, not including amendments. Ravalli County Bank filed Proof of Claim No. 1 and filed two amended claims, the second on May 15, 2009, asserting a claim in the amount of $176,813.69 secured by Debtor's real estate which it valued at $325,000. Ex. 2. The promissory notes and modifications attached to the original Claim 1 name the borrowers as both William C. Houston and Robin K. Houston, and directly beneath their names the notes state: "'I' includes each borrower above, joint and severally."

Andersons objected to Ravalli County Bank's claim to the extent it exceeds $100,000 against Debtor's real estate, alleging that there are two separate notes. Andersons and Ravalli County Bank filed a Stipulation (Docket No. 54) on May 8, 2009, in which Ravalli County Bank conceded that its claim secured by Debtor's real estate is in the amount of $100,000. Without objection, the Court approved that Stipulation (Docket No. 55)[9]. Therefore, Ravalli County Bank's claim secured by a lien against Debtor's homestead is limited to $100,000.

Andersons filed Proof of Claim No. 2, Ex. 3, asserting a claim in the amount of

---

[8] Section 362(c)(1)(A) provides in pertinent part that the automatic stay of an act against property of the estate under § 362(a) "continues until such property is no longer property of the estate." Section 362(c)(2) provides that the stay of any other act under subsection (a) continues until the earliest of "(A) the time a case is closed; (B) the time the case is dismissed; or (C) . . . the time a discharge is granted or denied." Since a discharge has been granted, § 362(c)(2)(C) is invoked and the stay of acts is terminated under that subsection.

[9] There has been no request for relief from that Order filed.

$497,412.72 based on their state court judgment, and secured by real estate they valued at $600,000. Samson testified that he spoke with Andersons' attorney Jon R. Binney about their claim, and that he told Binney that he would file a no asset case notwithstanding the scheduled malpractice claim[10]. On June 5, 2008, Andersons filed an amended Claim 2 on June 5, 2008, Ex. 4, bifurcating their claim into a secured claim in the amount of $210,000 and an unsecured claim in the amount of $287,412.72. Claim 2 continues to state the value of their real estate collateral as $600,000. No objection to Andersons' Claim 2 has been filed.

Robert L. Houston filed Proof of Claim No. 3 on May 2, 2008, asserting a secured claim in the amount of $7,500, but it is not marked as secured by real estate. No claim was filed by or on behalf of the first lienholder Gerald E. Johnson.

Andersons' complaint sought exception from discharge of their claim against the Debtor based on 11 U.S.C. § 523(a)(6), in Adversary Proceeding No. 08-00014. After trial the Court entered a memorandum of decision and Judgment on November 18, 2009, excepting $375,524.00[11] from the Debtor's discharge under § 523(a)(6). The Debtor filed a timely notice of appeal. This Court's decision was affirmed by the district court on June 3, 2009. No further appeal was filed and the judgment is final.

In the main case, Debtor's spouse and creditor Robin Houston ("Robin") filed a petition for an order allowing the state court to disburse condemnation case settlement. Andersons filed an objection and motion to modify stay (Docket No. 20) seeking relief from the stay to proceed

---

[10]Samson testified that he considered hiring counsel to pursue the legal malpractice claim but could not find an attorney willing to take the case.

[11]The $375,524 excepted from discharge represented Wendell's portion of Andersons' claim. The Court concluded that Linda's derivative claim in the sum of $100,000 was dischargeable and was discharged.

6

with execution against proceeds from a state court condemnation case.  After a hearing the Court entered an Order (Docket No. 44) granting Robin's petition in part and authorized the state court to hear and decide the settlement award of the condemnation settlement proceeds, provided that any allocation made to the Debtor was to be disbursed to the Trustee.  Samson testified that he received $19,486 from the state court, for which Andersons seek relief from the stay to pursue.

To summarize, the Court finds that the Debtor has an allowed homestead exemption on real property located at 131 Bear Creek Road, Victor, Ravalli County, Montana, in the amount of $125,000, which is subject to liens shown by the evidence of Gerald E. Johnson ($33,928), Ravalli County Bank ($100,000) and Andersons ($475,524).

## DISCUSSION

**A. Debtor's Motion to Avoid Anderson's Lien.**

Pursuant to 11 U.S.C. § 522(f)(1)(A), the Court may avoid the fixing of a judicial lien on an interest in property which the debtor may exempt to the extent such lien impairs an allowed exemption.  Section 522(f)(2)(A) provides: "For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of – (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens."

The main dispute between the parties is the value of the Debtor's interest in his homestead.  Andersons argue that Debtor is judicially estopped from asserting that the value of his property is less than $1,002,000, which is what he asserted in the condemnation litigation brought by the Montana DOT.  They argue McLeod's $1,002,000 valuation resulted in an increased condemnation settlement with the DOT in the amount of $90,000, and that McLeod

7

testified that his valuation as of May 2007 remained the same on the petition date November 7, 2007. Debtor argues that no evidence exists that McLeod's value of the homestead was ever asserted to the state court in the condemnation case, and no evidence exists that Debtor succeeded in the condemnation case.

The Ninth Circuit explained the doctrine of judicial estoppel in *Hamilton v. State Farm First & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001): "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996; *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)." Factors a court may consider in determining whether to apply he doctrine include: First, a party's later position must be "clearly inconsistent" with its earlier position; second, whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and third, whether the party asserting an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Hamilton*, 270 F.3d at 782-783, quoting *New Hampshire v. Maine*, 552 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Considering these factors the Court concludes that both Andersons' and Debtor's arguments for application of judicial estoppel fail to persuade.

Andersons' argument for judicial estoppel fails, first, because a settlement of the condemnation case occurred with the DOT, and therefore Houston did not succeed in persuading a court to accept a $1,002,000 valuation. Andersons' failed to show that the Debtor would derive an unfair advantage or impose an unfair detriment on them if not estopped. *Hamilton*, 270 F.3d at 782-783.

The Debtor requests the Court apply judicial estoppel against Andersons. Debtor contends that Andersons are "playing fast and loose with the courts" in asserting the value of Debtor's interest in their Proof of Claim is $210,000 compared with $501,000 in their objection to Debtor's Motion, which is forbidden by judicial estoppel. Debtor argues that Andersons succeeded in their position and that they would derive an unfair advantage or impose an unfair detriment on the Debtor as a result of their inconsistent positions. Debtor concedes that this Court has not ruled on the value of Debtor's interest in his homestead and therefore Andersons have not succeeded in persuading a court to accept the $210,000 value, but they argue that "it its [sic] at least unseemly" for them to argue that an asset is worth "two difference [sic] values." Debtor argues that Andersons are judicially estopped from arguing value based upon their value in their Proof of Claim and reliance by the Trustee. Andersons respond that they are not judicially estopped as to the value based on their Proof of Claim since no action has been taken based on their Proof of Claim and no final decision has been made regarding their claim, and that Debtor's assertion that they valued the Debtor's interest as $210,000 is inconsistent with their Proof of Claim. On this point the Court agrees with Andersons, and finds that Debtor failed his burden of proof to show that judicial estoppel should be applied against Andersons.

Ex. 4 is Andersons' amended claim, and it plainly states that the value of their collateral is $600,000, not $210,000. Debtor's argument that Andersons should be judicially estopped from asserting that the value is more than $210,000 is unsupported by Andersons' Claim 2, and fails to satisfy the requirements of *Hamilton*. The $210,000 amount stated on Claim 2 is not the value asserted for their collateral. That value is stated on Claim 2 as $600,000. The $210,000 amount of Andersons' secured claim on Claim 2 is not a statement of value, but rather nothing more than a recognition that there are two prior mortgages against the real estate and their claim

9

is undersecured. The Court does not view that as unseemly, or sufficient to apply judicial estoppel.

With respect to valuation, Andersons argue that the plain language of § 522(a)(2) requires the valuation of Debtor's property be made as of the petition date. Section 522(a)(2) provides that "In this section – . . . (2) 'value' means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." The subject property is the Debtor's homestead, which was property of the estate as of the petition date. Debtor contends that McLeod's appraisal is not inconsistent with Debtor's current position, and that McLeod testified that his appraisal does not establish the current value of the property. However, the current value of the property is irrelevant under § 522(f).

Exemption rights and lien avoidance rights are determined as of the date the bankruptcy petition was filed. *In re Chapell*, 373 B.R. 73, 77 (9th Cir. 2007); *In re Goswami,* 304 B.R. 386, 391-92 (9th Cir. BAP 2003), citing *White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *In re Chiu*, 266 B.R. 743, 752-53 (9th Cir. BAP 2001), *aff'd.* 304 F.3d 905 (9th Cir. 2002); *In re Cox*, 349 B.R. 4, 9 (Bankr. E.D. Cal. 2006). In *Chiu*, the BAP noted that "exemptions and impairment are determined on the date of bankruptcy and without reference to subsequent changes in the character or value of the exempt property. 266 B.R. at 751. Likewise lien avoidance rights are determined as of the petition date. *Goswami*, 304 B.R. at 392.

Debtor's testimony that his property has a value of $300,000 was not specific as to the date. Andersons' $600,000 statement of value on their Claim 2 was unsupported by any expert testimony. The only competent evidence of valuation of the Debtor's real property in the record, as of the petition date, November 7, 2007, is McLeod's appraisal, Ex. 5, which states that as of

the petition date, and after the taking, the value of the affected parcel of Debtor's real estate was $745,200, and the value of the second parcel was $196,000, a total value of $941,200. For purposes of the instant contested matter the Court finds that the value of the Debtor's real estate on the petition date was $941,200. Since Debtor owns the property in joint tenancy, the Court finds that the value of Debtor's interest in the property in the absence of any liens under § 522(f)(2)(A) is $470,600.

Next § 522(f)(2)(A) requires a summation of the liens against the property. Debtor calculates that the prior liens in the amount of "($6,6964)" [sic] and homestead $125,000 should be deducted from the $210,000 value which he argues should be taken from Andersons' Proof of Claim, and that Andersons' lien should be avoided except to the extent of $18,036.00. Andersons contend that $390,000 in prior liens exist plus the homestead, and that allowing for Robin's 1/2 interest in the excess equity leaves a judicial lien in the amount of $306,000. Both sides are mistaken in their calculation of liens.

Andersons' judicial lien under state statute MCA § 25-9-301(2) became a lien upon all of Debtor's real property in Ravalli County[12]. The total amount of Andersons' judgment is $475,524, including Linda Anderson's $100,000 portion which was discharged. However, the discharge only extinguishes a debtor's personal liability, and not debtor's actual debts. *In re Britton*, 18 Mont. B.R. 302, 303 (Bankr. D. Mont. 2000). "A bankruptcy discharge extinguishes only one mode of enforcing a claim--namely, an action against the debtor *in personam*--while leaving intact another--namely, an action against the debtor *in rem*" against assets. *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66, 84 (1991); *In re*

---

[12] It would appear that all three liens shown by the evidence in the instant record may attach to the settlement proceeds from the condemnation case held by the Trustee.

*Krenzelok*, 15 Mont. B.R. 391, 393 (Bankr. D. Mont. 1996).[13] Indeed, a secured creditor may stay aloof of the entire bankruptcy process, since valid liens pass through bankruptcy unaffected by the discharge. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); *Krenzelok*, 15 Mont. B.R. at 393. Thus, the amount of Andersons' judicial lien which is counted under § 522(f)(2)(B) is $475,524, not just Wendell's nondischargeable claim of $375,524, because the discharge did not prevent Linda from enforcing her judicial lien against the Debtor's real property absent the instant lien avoidance motion.

All other liens against the property shown by the evidence are: The first mortgage of Gerald E. Johnson shown by Andersons' Ex. 1, Schedule D, in the amount of $33,928, and the second mortgage of Ravalli County Bank fixed by stipulation in the amount of $100,000[14]. Under the formula of § 522(f)(2)(A), the sum of Andersons' judicial lien ($475,524), all other liens on the property ($133,928), and the amount of exemption the Debtor could claim if there were no liens on the property ($125,000) is $734,452.00. That amount, $734,452, exceeds the value that the Debtor's interest would have in the absence of any liens ($470,600[15]) and therefore impairs the Debtor's homestead exemption and is subject to avoidance under § 522(f)(1)(A), to the extent of $263,852. Thus the Court finds that the Debtor's motion to avoid Andersons'

---

[13] A secured creditor has a right to repossess its collateral if a debtor fails to make payments after discharge, without violating § 524(a)(2), so long as the creditor is not collecting the debt as a personal liability of the debtor. *In re Garske*, 287 B.R. 537, 542, 545 (9th Cir. BAP 2002), citing *Johnson v. Home State Bank*, 501 U.S. at 80, 83, 111 S.Ct. 2150, 2154.

[14] The entire amount of the Ravalli County Bank lien is counted because Houston is jointly and severally liable for the entire amount. Similarly, his Schedule D states that he is a codebtor for the Gerald E. Johnson claim in the amount of $33,928, so the entire claim is counted.

[15] The total value after the taking on the petition date of $941,200 divided by 2 equals $470,600.

judicial lien satisfies the requirements of § 522(f)(1)(A) but only in part, and the Court avoids Andersons' judicial lien to the extent of $263,852, leaving a balance of Andersons' judicial lien still attached to the Debtor's real property in the amount of $211,672[16].

**B. Andersons' Motion to Modify Stay.**

Andersons move to modify the stay because their judgment excepting $376,524 from the Debtor's discharge was affirmed on appeal and is final. Andersons seek relief from the stay to collect the amount of their judicial lien from the Debtor's real estate and to proceed with execution against Debtor's post-petition income and assets which are not property of the estate. The Debtor's brief does not address Andersons' motion to modify stay.

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999). The party seeking relief must first establish a prima facie case that cause exists for relief under 11 U.S.C. § 362(d)(1). *United States v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *Duvar Apt. Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996). Then, except for the issue of the Debtor's equity in the property, in a proceeding on a motion to modify the automatic stay the Debtor has the burden of proof to show that the stay should not be modified or annulled. *In re Mittlestadt*, 20 Mont. B.R. 46, 52 (Bankr. D. Mont. 2002); *In re Hungerford*, 19 Mont. B.R. 103, 133-34 (Bankr. D. Mont. 2001); *In re National Environmental Waste* Corp., 191 B.R. 832, 836

---

[16] $475,524 minus $263,852 equals $211,672. This Court was not asked to make a determination as to how much of the remaining lien secures Wendell's claim and how much secures Linda's discharged claim, and therefore nothing herein should be interpreted as making any such determination, which is left for the state court.

07-61306-RBK    Doc#: 73    Filed: 08/20/09    Entered: 08/20/09 11:46:13    Page 14 of 15

(Bankr. C.D. Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997)**.**

Since Debtor's brief did not address Andersons' motion to modify stay, it cannot be read as satisfying Debtor's burden.  Andersons have shown that Wendell has a debt that has been excepted from the Debtor's discharge.  Debtor's motion to avoid Andersons' judicial lien will be granted only in part, leaving Andersons a judicial lien in the amount of $211,672.  No objection has been filed to Andersons' claim and no adversary proceeding to determine the validity of their lien has been filed.  Finally, a Discharge of Debtor has been entered terminating the stay under § 362(c)(2)(C).  Based on those factors the Court finds that Andersons have satisfied their burden under § 362(d)(1) to show cause to modify the stay, and finds that Debtor has failed his burden to show that relief should not be granted.

Granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay.  *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993).  Thus, while the Court has flexibility in determining whether to grant Andersons' motion to modify stay, by granting the motion the Debtor will retain whatever claims, defenses and remedies he may have in a nonbankruptcy forum, including enforcement of his homestead exemption.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this case under 28 U.S.C. 1334(a).

2. Debtor's motion to avoid Andersons' judicial lien and Andersons' motion to modify stay both are core proceedings under 28 U.S.C. § 157(b)(2).

3. "Value" for purposes of § 522(f)(2)(A) is defined at § 522(a)(2) as meaning the fair market value as of the date of the filing of the petition.  The value of Debtor's real property on

14

the date of the filing of his petition was $941,200, and the value of his interest was $470,600.

4. Debtor satisfied in part his burden of proof under 11 U.S.C. § 522(f)(1)(A) that Andersons' judicial lien impairs his homestead exemption. Under the formula set forth at § 522(f)(2)(A) the sum of Andersons' judicial lien, all other liens and the Debtor's allowed homestead exemption ($734,452) exceeds the value that the Debtor's interest would have in the absence of any liens ($470,600) and therefore impairs the Debtor's homestead exemption and is subject to avoidance under § 522(f)(1)(A), to the extent of $263,852, leaving a balance of Andersons' judicial lien still attached to the Debtor's real property in the amount of $211,672.

5. Andersons satisfied their burden under § 362(d)(1) of showing that cause exists to grant their motion to modify stay; and the Debtor failed his burden of proof to show that relief from the stay should not be granted.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above (1) granting in part and denying in part the Debtor's motion to avoid Andersons' judicial lien (Docket No. 38), filed April 13, 2009; and (2) granting Andersons' renewed motion to modify stay (Docket No. 33), filed April 9, 2009.

                BY THE COURT

                /s/ Ralph B. Kirscher
                HON. RALPH B. KIRSCHER
                U.S. Bankruptcy Judge
                United States Bankruptcy Court
                District of Montana